## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**KATHERINE RICE,**
      Plaintiff,

**v.**

**KILOLO KIJIKAZI,**
**Acting Commissioner**
**of the Social Security**
**Administration,**
      Defendant.

**Case No. 2:22-cv-563-CLM**

## MEMORANDUM OPINION

Katherine Rice seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Rice's application in an opinion written by an Administrative Law Judge ("ALJ").

Rice argues that the ALJ erred in (1) rejecting her subjective pain testimony; (2) evaluating the opinion evidence of her treating physician, Dr. Albert Smith; and (3) not accounting for her mental limitations in the residual functional capacity assessment.

As detailed below, the ALJ did not reversibly err. So the court **WILL AFFIRM** the SSA's denial of benefits.

I.    **STATEMENT OF THE CASE**

A.    **Rice's Disability, as told to the ALJ**

Rice was 63 years old at the time of the ALJ's hearing decision. Rice graduated high school and was a semester away from graduating from college. (R. 38). And Rice worked 25 years as the administrative assistant to the chief of staff for the Mayor of Birmingham. (R. 38–39).

At the ALJ hearing, Rice testified that she suffers from diverticular disease (which causes abdominal issues) and scoliosis. (R. 39). Rice also said that she sometimes uses a cane because of arthritis in her knees. (R. 49–50). According to Rice, her abdominal issues cause her to use the restroom 6 to 7 times a day, spending 20 to 30 minutes in the restroom each visit. (R. 43). Rice's abdominal pain also causes her to suffer spasms that take her breath away. (*Id.*).

Rice's scoliosis makes it hard for her to sit for extended periods of time. (R. 44). So Rice usually sits with her feet elevated. (*Id.*). And when Rice takes muscle relaxers to help with her abdominal pain, all she can do is lie down because they cause her to sleep and be "totally out of it." (R. 45). Rice also said her diabetes causes her to suffer fatigue. (R. 46–47). For example, Rice can no longer sweep, mop, or vacuum. (R. 47). And if Rice's arthritis starts acting up, it's hard for her to even walk. (R. 49).

### B.    Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |

| *Determine Residual Functional Capacity* | | |
|---|---|---|
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

## C.    Rice's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Rice applied for disability insurance benefits and a period of disability in August 2020, claiming that she could not work because of various ailments, including glaucoma, high blood pressure, high cholesterol, diverticulitis, severe abdominal pain, type 2 diabetes, moderate obesity, history of chest pains, and Gerd. (R. 209–10). After receiving an initial denial in January 2021, Rice requested a hearing, which the ALJ conducted in October 2021. The ALJ ultimately issued an opinion denying Rice's claims in November 2021. (R. 16–28).

At Step 1, the ALJ determined that Rice was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Rice suffered from the following severe impairments: obesity, scoliosis and lumbar spondylosis, and diverticulitis.

At Step 3, the ALJ found that none of Rice's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Rice's residual functional capacity.

The ALJ determined that Rice had the residual functional capacity to perform a range of light work with these added limitations:

- Rice can engage in no more than occasional climbing of ramps and stairs.

- Rice cannot climb ladders, ropes, or scaffolds.

- Rice can only frequently stoop, kneel, crouch, and crawl.

- Rice can only frequently push/pull with her lower extremities.

- Rice must avoid concentrated exposure to extreme heat or extreme cold.

- Rice must avoid all exposure to excessive vibration, unprotected heights, and hazardous machinery.

- Rice's work should be goal oriented.

- Rice is excluded from production pace or assembly line work.

At Step 4, the ALJ found that Rice could perform her past relevant work as an administrative assistant. So Rice was not disabled under the Social Security Act.

Rice requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Rice makes three arguments for why the ALJ erred in finding her not disabled. First, Rice argues that the ALJ erred in rejecting her subjective pain testimony. Second, Rice asserts that the ALJ erred in evaluating the opinion testimony of Dr. Smith. Finally, Rice contends that the ALJ erred in not discussing her mental functional limitations in the residual functional capacity assessment. The court will address each argument in turn.

## A.   Subjective Pain Testimony

Rice first argues that the ALJ failed to properly evaluate her subjective pain testimony under the Eleventh Circuit's pain standard and that substantial evidence doesn't support the ALJ's credibility determination. An ALJ must apply the two-step "pain standard" to subjective testimony on pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If she does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ found that Rice's "medically determinable impairments could reasonably be expected to cause some symptoms and/or functional limitations." (R. 23). But the ALJ stated that Rice's statements about the "intensity, persistence, and limiting effects of these symptoms are inconsistent with the objective medical evidence, treatment regimen and response to treatment, and daily activities." (*Id.*). More specifically, the ALJ found Rice's statements "inconsistent because the objective evidence of record generally does not support the alleged loss of functioning." (*Id.*). In other words, the ALJ found that Rice made it past the first step—*i.e.*, she showed evidence of a medically determinable impairment—but not the second step of linking her subjective pain symptoms to the medically determinable impairment. To support this conclusion, the ALJ cited Rice's treatment history, medical records, results from the consultative examination, and the opinion evidence in the record. (R. 23–27). This is a proper application of the pain standard, so the ALJ's credibility finding will stand unless it lacks the support of substantial evidence. *See Mitchell*, 771 F.3d at 782.

Rice asserts that substantial evidence doesn't support the ALJ's decision to reject her testimony about her bowel urgency and frequency and to omit any limitations requiring extra work breaks. As Rice notes, she has consistently reported symptoms of irritable bowel syndrome and diverticulosis, such as abdominal pain, constipation, and diarrhea. (R. 300, 301, 303, 330, 332, 341, 342, 355, 404). And Dr. Smith concluded that Rice suffers from chronic constipation, diarrhea, and abdominal tenderness, which will often interfere with her ability to concentrate and require her to have ready access to a restroom. (R. 425–29). Plus, Rice had a diverticulitis flare in March and April 2019. (R. 300–01, 330).

But other evidence, cited by the ALJ, supports the ALJ's decision to discredit Rice's testimony about the severity of her abdominal pain and gastrointestinal issues. For example, Rice's April 2019 colonoscopy revealed no polyps and few scattered diverticula but no diverticulitis. (R. 303). And the colonoscopy report recommended only that Rice have a follow up colonoscopy in 7 years and get "fiber therapy at least 10 to 15 g of dietary fiber or supplement daily." (R. 304). Rice later underwent an abdominal ultrasound that showed a renal cyst and prior cholecystectomy but otherwise unremarkable findings. (R. 413). Plus, a treatment note from Rice's cardiologist noted that Rice's diverticulitis "is asymptomatic now." (R. 370). As a result, the court finds that substantial evidence supports the ALJ's credibility determination.

The court also rejects Rice's argument that the ALJ "cherry-picked" the medical evidence when assessing the credibility of her subjective pain testimony. To be sure, the ALJ didn't refer to every medical record or notation when reaching her decision. But the ALJ recognized that Rice had undergone a cholecystectomy in 2017 and suffered from constipation alternating with diarrhea, mild right-sided abdominal pain, diverticulosis, and GERD. (R. 23). So the ALJ adequately considered medical evidence both favorable and unfavorable to Rice when assessing her credibility.

—

In summary, having reviewed the medical evidence cited by Rice and the ALJ, the court finds that a reasonable person could have reached the same credibility determination as the ALJ. So even though the court may have made a different credibility determination, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [Rice's] testimony, but whether the ALJ was clearly wrong to discredit it.").

### B.   Dr. Smith's Opinion Evidence

Rice next attacks the ALJ's evaluation of the opinion evidence from her primary care physician, Dr. Albert Smith.

1. <u>Applicable legal framework</u>: Rice applied for disability in August 2020, so the SSA's 2017 regulations on opinion evidence apply to the ALJ's evaluation of Dr. Smith's opinions. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). Under these regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how she considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent a medial opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

2. <u>Dr. Smith's opinion</u>: In response to a physical impairment questionnaire, Dr. Smith stated that Rice suffered from diverticular disease, scoliosis, arthritis, and glaucoma and that her prognosis was stable. (R. 425). Dr. Smith also said that Rice had recurring, daily

abdomen and back pain that he rated as a 10/10 on the pain scale. (*Id.*).
Dr. Smith listed the factors that caused Rice's pain to include meals,
constipation and diarrhea, her cholecystectomy, partial colectomy, and
appendectomy. (*Id.*).

According to Dr. Smith, Rice's symptoms would frequently interfere
with her attention and concentration. (R. 426–27). And Rice's abdominal
pain interferes with her ability to work in even a sedentary occupation, on
a full-time, 8 hours a day, 5 days a week basis. (R. 427). But Rice can walk
an unlimited number of city blocks without rest. (*Id.*). And Rice can sit,
stand, and walk for 3-4 hours before needing to change positions. (*Id.*).
Rice can also sit, stand, and walk for 6 hours total in an 8-hour workday.
(R. 428). Rice, however, needs to take unscheduled breaks of 15 minutes
most days. (*Id.*). And one to two times each week Rice will need to lie down
or rest at unpredictable intervals of 15 minutes. (*Id.*). Dr. Smith added
that Rice would be absent from work about twice a month. (*Id.*). But Rice
didn't need to use a cane or other assistive device and had no significant
limitations in doing repetitive reaching, handling, or fingering. (*Id.*). In
fact, 100% of the time Rice can use her hands to grasp, turn, and twist
objects; her fingers for fine manipulation; and her arms to reach out and
overhead. (*Id.*). Finally, Dr. Smith said that Rice can constantly carry
between 1 and 10 pounds, frequently carry between 11 and 20 pounds,
and occasionally carry between 21 and 50 pounds. (R. 429).

The ALJ found Dr. Smith's opinion on Rice's function-by-function
limitations related to her ability to sit, stand, walk, reach, handle, finger,
lift, and carry "to be generally persuasive." (R. 27). But the ALJ found Dr.
Smith's opinions on Rice's other limitations unpersuasive. (*Id.*).
Substantial evidence supports this finding. As for supportability, the ALJ
found the limitations Dr. Smith provided "somewhat contradictory"
because "they indicate [Rice] is severely limited by her pain at times but
is otherwise able to perform a wide range of work, up to the medium level
of exertion." (*Id.*). The ALJ also found "the statement that the claimant
has 10/10 pain, would be frequently distracted as a result, needs
unscheduled breaks/rest periods, would miss two or more days of work per

month, and requires ready access to a bathroom are not supported by treatment records from this provider." (*Id.*). For example, the ALJ noted that Dr. Smith's treatment records "consistently document [Rice's] impairments are stable without significant ongoing complaints, certainly not to the level indicated by these statements, and essentially unremarkable physical examinations." (*Id.*).

The ALJ's assessment of the supportability factor was reasonable. Dr. Smith's rating of Rice's pain of 10/10 on the pain scale contradicted many of his later findings, including the finding that Rice could walk an unlimited number of city blocks without rest. (R. 425, 427–29). And the ALJ correctly noted that Dr. Smith's treatment notes didn't support the severe limitations he documented in response to the physical impairment questionnaire. (*See* R. 326–28, 364–65, 403–05).

As for consistency, the ALJ noted that Rice's "care has been conservative and routine throughout the relevant period." (R. 27). The ALJ also said "[f]requent 10/10 abdominal pain would likely necessitate more regular gastroenterology follow-up or at least emergency room visits, which are not present in this record." (*Id.*). Finally, the ALJ noted that Rice's November 2020 cardiology note said that her diverticulitis is asymptomatic and that her most recent colonoscopy and abdominal ultrasound "were essentially unremarkable." (*Id.*). The record supports these findings. (R. 300–04, 356, 372, 413). And based on this objective medical evidence, it was reasonable for the ALJ to determine that Dr. Smith's opinions on most of Rice's limitations were unpersuasive.

Rice complains that the ALJ ignored that other details from Dr. Smith's treatment notes support his opinion. For example, she notes that his records repeatedly list symptoms of abdominal pain, chronic constipation, and chronic diarrhea. (R. 301, 330). And Rice states that the ALJ should have discussed her diverticular flare when assessing Dr. Smith's opinion. But Rice's alleged disability onset date was May 9, 2019, and her diverticular flare was noted in March and April 2019. (R. 16, 301, 330). So the medical records discussing Rice's diverticular flare weren't as

relevant as the medical records that postdated her disability onset date. *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018). Plus, the ALJ explained that the findings from the colonoscopy ordered in response to Rice's diverticular flare didn't support the limitations that Dr. Smith said Rice needed. (R. 27). In short, having reviewed the ALJ's hearing decision and the record, the court determines that the ALJ adequately explained why she found Dr. Smith's opinion on many of Rice's limitations unpersuasive and that substantial evidence supports this finding. So the ALJ didn't err in evaluating Dr. Smith's opinion evidence.

### C.    Mental Limitations

Rice finally argues that the ALJ erred in not discussing why she omitted mental limitations from Rice's residual functional capacity. At Step 2, the ALJ found that Rice had a non-severe impairment of depressive disorder but severe impairments of obesity, scoliosis and lumbar spondylosis, and diverticulitis. (R. 18–20). Because the ALJ found that Rice suffered from at least one severe impairment, the ALJ needed to consider all Rice's impairments (both severe and non-severe) when assessing her residual functional capacity. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). Rice says that the ALJ failed to fulfill this duty.

1. Consideration of evidence: The court disagrees. Though the ALJ's residual functional capacity assessment mainly focuses on Rice's physical impairments, the ALJ also briefly addressed the objective medical evidence related to Rice's depression. As the ALJ noted, November 2020 treatment notes from Dr. Smith show that Rice complained of slight depression and "worsening of memory issues." (R. 24, 364). But "[t]he record does not document any additional complaints of memory issues or depression." (R. 24).

Substantial evidence supports this finding, and Rice hasn't pointed to any evidence that suggests that she requires greater mental functioning limitations than those that the ALJ assessed. In fact, Rice did

not allege any mental impairments in her disability report, and her function report doesn't suggest that she suffers from limitations caused by depression. (R. 210, 222–29). Rice also didn't mention any restrictions or limitations resulting from depression at her ALJ hearing. (R. 35–51).

As Rice acknowledges, the ALJ's finding of some mild limitations in the four broad areas of mental functioning didn't require the ALJ to assess a mental functioning limitation in the residual functional capacity finding. And the ALJ did include limitations that accounted for Rice's depression by limiting her to goal oriented work and excluding her from production pace or assembly line work. (R. 21). Plus, after scrutinizing the ALJ's hearing decision and the record, the court is convinced that the ALJ properly considered and discussed all relevant evidence about Rice's medical condition as a whole. So the ALJ didn't reversibly err by failing to more specifically set forth her findings on Rice's mental functional limitations. *See Arce v. Comm'r of Soc. Sec. Admin.*, 2022 WL 18717739, at *10 (S.D. Fla. Aug. 10, 2022).

2. <u>Any error was harmless</u>: Even if an ALJ should normally include more specific findings about a non-severe mental impairment, the ALJ's failure to do so here was harmless. When, as here, a claimant doesn't allege an impairment, such as depression, as a basis for her disability, the ALJ needn't consider the impairment in her hearing decision. *See Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837 (11th Cir. 2018) (holding ALJ under no duty to consider Asperger's disorder because claimant didn't allege Asperger's as basis for disability in either application for benefits or at ALJ hearing). So the ALJ was under no duty to address Rice's depression, much less engage in a detailed analysis explaining why she didn't include certain functional limitations related to depression in Rice's residual functional capacity.

## IV.   CONCLUSION

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on December 11, 2023.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE